

# The Business Court of Texas, Third Division

| | | |
|---|---|---|
| C TEN 31 LLC, *directly and derivatively on behalf of* SUMMERMOON HOLDINGS LLC, | § § § § § § | |
| *Plaintiff,* | § | |
| v. | § | Cause No. 24-BC03A-0004 |
| JOHN TARBOX, JORDAN VIMONT, CU DESIGNATED MANAGER 1 LLC, and CU DESIGNATED MANAGER 2 LLC, | § § § § § | |
| *Defendants.* | § | |

## SYLLABUS

On a motion to remand, the Court decides issues of statutory construction and procedure relating to the scope of the Business Court's jurisdiction under Section 25A.004(e) of the Government Code and the burden-shifting framework for challenges to amount-in-controversy pleadings in the removal context.

First, the Court holds that Section 25A.004(e), which grants the Court jurisdiction over actions that seek "injunctive relief or a declaratory judgment" and involve "a dispute based on a claim within the court's jurisdiction under Subsection (b), (c), or (d)," incorporates the amount-in-controversy limit (or exception) of the underlying Subsections—i.e., Subsection (b)'s $5 million limit, Subsection (d)'s $10 million limit, or Subsection (c)'s exemption from any amount-in-controversy limit. Here, the removing party invokes Subsection (b) as underlying the Court's

jurisdiction over this action for injunctive and declaratory relief. As a result, the Court has jurisdiction only if the value of the rights at issue exceeds $5 million.

Second, the Court holds that when, as here, the notice of removal pleads that the value of the rights at stake are within the Court's jurisdiction and the petition does not plead otherwise, the party moving for remand bears the initial burden of showing that the amount pleaded is fraudulent or that a different amount is readily established, such as by statute. The Court adopts the same burden-shifting framework applied to jurisdictional challenges raised through pleas to the jurisdiction and motions for traditional summary judgment, such that the movant bears the initial burden on the pretrial motion but the party asserting jurisdiction bears the ultimate burden of proof at trial.

The Court also denies a request for attorney's fees and holds that the movant has not met its burden of proving that a venue clause in the Company Agreement applies to this action or that it binds Defendants, who are not signatories.[1]

---

[1] The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.



# The Business Court of Texas,
## Third Division

C TEN 31 LLC, *directly and derivatively on behalf of* SUMMERMOON HOLDINGS LLC,

　　*Plaintiff,*

v.

JOHN TARBOX, JORDAN VIMONT, CU DESIGNATED MANAGER 1 LLC, and CU DESIGNATED MANAGER 2 LLC,

　　*Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§

Cause No. 24-BC03A-0004

## OPINION AND ORDER

¶ 1　Before the Court is Plaintiff's motion to remand. The Court holds that (1) jurisdiction under Section 25A.004(e) is limited by the amount-in-controversy requirement (or exception) in the underlying statute, and (2) when a notice of removal pleads that the amount in controversy is within the Court's jurisdictional limits and the petition below is silent on that issue, the party moving for remand

bears the initial burden of showing that the amount pleaded is fraudulent or that a different amount is readily established.

¶ 2    Having considered the briefing, the oral arguments, the evidence, and the governing law, the Court ORDERS that:

- the request for remand based on lack of jurisdiction is CARRIED pending an evidentiary hearing after discovery and supplemental briefing;[1]

- the request for remand based on the choice-of-venue clause is DENIED;

- the request for attorney's fees is DENIED;

- the request to supplement the record is GRANTED.

### Procedural Background

¶ 3    This dispute arises out of the governance of Summer Moon Holdings, LLC (Summer Moon), which owns, operates, and franchises coffee shops. Summer Moon is governed by a Board of Managers (the Board), made up of three managers—one manager designated by minority owner CTen 31 LLC (CTen) and two managers designated by majority owner Coffee Unplugged, LLC (CU). On September 16, 2024, CTen's designated manager purported to remove CU's two designated managers, John Tarbox and Jordan Vimont, from the Board based on putative conflicts of interest. Two days later, CTen[2] sued Tarbox and Vimont in the 261st District

---

[1] *See* Jurisdictional Analysis, Part B(4), *infra.*

[2] CTen brings this suit both directly and derivatively on behalf of Summer Moon.

Court of Travis County, Texas, seeking a declaratory judgment that the removal was effective. Tarbox and Vimont removed the suit to this Court over CTen's objection.

¶ 4   In this Court, CTen filed a second amended petition alleging that Vimont and Tarbox resigned from the Board but that CU's designated replacement managers—CU Designated Manager 1 LLC and CU Designated Manager 2 LLC (the CU Managers)—are "Trojan Horse shell entities" and a "backdoor attempt to put Tarbox and Vimont back on the Board." CTen's second amended petition adds the CU Managers as defendants, requests injunctive relief, and seeks additional declaratory relief regarding the CU Managers and a series of alleged breaches of duties by all Defendants.

¶ 5   CTen subsequently moved to remand this action to the District Court, which Defendants opposed. CTen asks the Court to remand for lack of jurisdiction or based on a venue-selection clause. CTen also seeks an award of attorney's fees and an opportunity to supplement the record. Defendants oppose the requested relief. The Court held a hearing on the motion to remand on December 11, 2024.

¶ 6   After the hearing on the motion to remand, CTen filed an application for a TRO and temporary injunction, as well as a third amended petition. The third amended petition added claims relating to the removal and replacement of Summer Moon's chief financial officer (CFO), which is also the subject of the application for temporary relief. The Court held a TRO hearing on December 27, 2024.

## Jurisdictional Analysis

¶ 7    Section 25A.006(d) of the Government Code and Rule 355 of the Texas Rules of Civil Procedure dictate that if this Court lacks jurisdiction over a removed action, the Court must remand the action to the court from which it was removed.[3] The parties dispute whether this Court has jurisdiction over this removed action. Their dispute raises two key jurisdictional issues: (1) whether the $5 million amount-in-controversy requirement in Section 25A.004(b) of the Government Code limits the Court's jurisdiction under Section 25A.004(e); and (2) if so, how a dispute over the amount in controversy is resolved in the removal context. The Court holds that it has jurisdiction only if the amount in controversy exceeds $5 million, and the movant bears the initial burden on the amount in controversy, under the same framework that governs pleas to the jurisdiction.

**A.    This Court has jurisdiction over this action only if the amount in controversy exceeds $5 million.**

¶ 8    The parties' jurisdictional dispute requires the Court to interpret Section 25A.004 of the Government Code.[4] Texas courts determine the meaning of statutes from the statutory text, giving undefined words their ordinary,

---

[3] TEX. GOV'T CODE § 25A.006(d); TEX. R. CIV. P. 355(f)(1).

[4] Statutory construction is a question of law for the Court. *E.g., Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024); *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 700 (Tex. 2015).

contemporaneous meaning, as understood from reading the statute as a whole and in context.[5] As used here, "context" generally refers to "the surrounding words and structure of the operative text," not extrinsic and subjective considerations.[6] The Court thus examines the language and structure of the provisions at issue in light of the statutory framework, striving for a "fair meaning" rather than "hyper-technical readings of isolated words or phrases."[7] Absent ambiguity, the inquiry begins and ends with the text: "the alpha and the omega of the interpretive process."[8]

¶ 9    Whether a court has subject-matter jurisdiction is generally a question of law for the court to decide, but controverting evidence of jurisdictional facts can create a fact question for the fact finder to decide.[9]

---

[5] *Malouf*, 694 S.W.3d at 718; *Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 460 (Tex. 2024); *City of Austin v. Quinlan*, 669 S.W.3d 813, 821 (Tex. 2023); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 75 (Tex. 2011).

[6] *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 390 n.3 (Tex. 2023) (per curiam). The Texas Supreme Court's approach is consistent with the "whole text" canon, which "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Luminant Energy*, 691 S.W.3d at 461–62 (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012)).

[7] *In re Dallas Cnty.*, 697 S.W.3d 142, 158 (Tex. 2024) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 356 and *In re Off. of Att'y Gen. of Tex.*, 456 S.W.3d 153, 155 (Tex. 2015)).

[8] *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017); *see also City of Denton v. Grim*, 694 S.W.3d 210, 214 (Tex. 2024); *Brown v. City of Houston*, 660 S.W.3d 749, 752 (Tex. 2023); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex. 2006).

[9] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

## 1. This Court's jurisdiction is governed by Section 25A.004.

¶ 10    Section 25A.004 grants this Court "civil jurisdiction concurrent with district courts" in certain categories of actions, subject to specific exclusions.[10] The layout of Section 25A.004 is generally:

- Subsection (a): the Court's powers generally

- Subsection (b): jurisdiction over certain business-affairs actions when the amount in controversy exceeds $5 million

- Subsection (c): jurisdiction over Subsection (b) disputes, regardless of the amount in controversy, when a party is a publicly traded company

- Subsection (d): jurisdiction over actions arising out of certain commercial transactions[11] and violations of the Finance or Business & Commerce Code, when the amount in controversy exceeds $10 million

- Subsection (e): jurisdiction over certain injunctive and declaratory actions

- Subsection (f): supplemental jurisdiction

- Subsection (g): exclusions from the Court's non-supplemental jurisdiction

- Subsection (h): absolute exclusions from the Court's jurisdiction[12]

¶ 11    Defendants rely on Subsections (b) and (e). Subsection (b) grants the Court jurisdiction in listed actions "in which the amount in controversy exceeds $5

---

[10] TEX. GOV'T CODE § 25A.004.

[11] Specifically, "qualified transactions," involving at least $10 million in consideration or value, *id.* §§ 25A.001(14), 25A.004(d)(1), and when the parties have agreed—either in the contract or after the fact—to jurisdiction in the Business Court, *id.* § 25A.004(d)(2), subject to certain exclusions.

[12] *See id.* § 25A.004(b)–(h).

million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs."[13] Generally, the listed actions are:

- derivative proceedings;

- actions regarding an organization's governance, governing documents, or internal affairs;

- actions against certain defendants in which a claim is asserted under state or federal securities or trade regulation law;

- certain actions by an organization or its owner against the organization's owner, controlling person, or managerial official;

- certain actions alleging a breach of a duty owed to an organization or its owner;

- actions seeking to pierce the corporate veil; and

- actions arising out of the Business Organizations Code.[14]

Subsection (c) expands the reach of Subsection (b), granting the Court jurisdiction over "an action described in Subsection (b) regardless of the amount in controversy if a party to the action is a publicly traded company."[15]

¶ 12 Subsection (e) grants the Court jurisdiction over actions "seeking injunctive relief or a declaratory judgment under Chapter 37, Civil Practice and

---

[13] *Id.* § 25A.004(b).

[14] *Id.* § 25A.004(b)(1)–(7).

[15] *Id.* § 25A.004(c).

Remedies Code, involving a dispute based on a claim within the court's jurisdiction under Subsection (b), (c), or (d)."[16]

### 2. A claim is "within the court's jurisdiction under Subsection (b)" only if the amount in controversy in the action exceeds $5 million.

¶ 13 Defendants argue that this Court has jurisdiction under Subsection (e) because this action seeks injunctive and declaratory relief and involves "a dispute based on a claim within the court's jurisdiction under Subsection (b)."[17] They assert that the underlying claims here fall within four of the categories listed in Subsection (b)[18] and that this satisfies Subsection (e), regardless of the amount in controversy. CTen does not dispute that this is a declaratory and injunctive action or that it falls within the categories of actions listed in Subsection (b). But CTen argues that the $5 million amount-in-controversy requirement in Subsection (b) also applies under Subsection (e).[19] For the reasons below, the Court agrees with CTen that it lacks jurisdiction unless the amount in controversy exceeds $5 million.

---

[16] *Id.* § 25A.004(e).

[17] *Id.* § 25A.004(e).

[18] Specifically, they assert that it is a derivative action, relates to Summer Moon's governance and governing documents, alleges board managers breached duties owed to CTen and Summer Moon, and arose out of the Business Organizations Code. *Id.* § 25A.004(b)(1), (2), (5) & (7).

[19] *Id.* § 25A.004(e).

### a. Subsection (b)'s amount-in-controversy requirement applies here.

¶ 14   The first issue is whether the phrase "within the court's jurisdiction under Subsection (b)" incorporates Subsection (b)'s amount-in-controversy minimum. The Court concludes that it does.

¶ 15   Because the term "within" is undefined, the Court gives the term its ordinary meaning, as it would be understood by a reasonable reader in this context. Courts often consult dictionary definitions from when the statute was enacted to determine a term's ordinary meaning.[20] Modern dictionaries define "within," when used as a preposition (as it is here), as indicating enclosure or containment; that something is inside—not beyond—the limit, period, length, range, or compass of something else; and most relevantly, that something is in the field, sphere, or scope of something else, such as when something is "within the jurisdiction of the state" or "within one's power."[21] Consistently, for example, the United States Supreme Court held in *United States v. Rodgers*[22] that a matter is "within the jurisdiction" of

---

[20] *E.g.*, *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 735 (Tex. 2024); *Interest of J.S.*, 670 S.W.3d 591, 598 (Tex. 2023); *MCI Telecomm. Co. v. AT&T Co.*, 512 U.S. 218, 227–28 (1994).

[21] *Within*, MERRIAM-WEBSTER.COM DICTIONARY (2024), available at www.merriam-webster.com; *within*, DICTIONARY.COM (2024), available at www.dictionary.com; *within*, CAMBRIDGE DICTIONARY (2024), available at www.dictionary.cambridge.org.

[22] 102 S. Ct. 2382, 2393 (1982); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 428 (2004) (holding statute limiting courts to granting habeas relief "within their respective jurisdictions" required that issuing court have jurisdiction over custodian); *Plyler v. Doe*, 457 U.S. 202, 214 (1982) (holding "within its jurisdiction," as used in Fourteenth Amendment, meant those on whom State would impose its laws).

a governmental entity when the entity has the power to exercise authority over the matter, distinguishing authorized functions from peripheral matters.[23]

¶ 16    The statute also uses the undefined term "under" as a preposition. In addition to those less applicable in this context,[24] modern definitions of "under," when used as a the preposition, include when one thing is subject to the authority of or authorized by another.[25] Consistently, in *National Association of Manufacturers v. Department of Defense*, the United States Supreme Court held that "under section 1311," as used in the Clean Water Act, meant "pursuant to" or "by reason of the authority of" section 1311.[26] In *Powell v. City of Baird*, the Texas Supreme Court similarly held that "a poll tax is levied *under a State law*, within the meaning of Section 2 of Article VI of our State Constitution, if some State law directly authorizes such levy."[27] The Court explained, "As used in the above constitutional provision, the word 'under' is certainly used as a preposition, indicating subjection, guidance, or control. It is used in a sense of 'by authority of.'"[28]

---

[23] 466 U.S. 475, 479 (1984); *see also, e.g.*, *United States v. Gray*, 642 F.3d 371, 378 (2d Cir. 2011).

[24] For example, spatial definitions (such as below or beneath), quantitative definitions (such as less than or lower than), or hierarchical definitions (such as subordinate to).

[25] *Under*, MERRIAM-WEBSTER.COM DICTIONARY (2024), available at www.merriam-webster.com; *under*, DICTIONARY.COM (2024), available at www.dictionary.com; *under*, CAMBRIDGE DICTIONARY (2024), available at www.dictionary.cambridge.org.

[26] 583 U.S. 109, 124 (2018).

[27] 133 Tex. 489, 496, 128 S.W.2d 786, 789 (1939) (emphasis added).

[28] *Id.* at 497, 128 S.W.2d at 790.

¶ 17    Based on these ordinary meanings, understood in the context of Section 25A.004, the Court concludes that a claim is "within the court's jurisdiction under Subsection (b)" if it is in the scope of (within) the jurisdiction granted to this Court by the authority of (under) Subsection (b). The scope of the jurisdiction authorized by Subsection (b) is limited to "actions in which the amount in controversy exceeds $5 million."[29] Thus, the phrase "within the court's jurisdiction under Subsection (b)" incorporates Subsection (b)'s amount-in-controversy requirement.

¶ 18    This conclusion is buttressed by Subsection (e)'s inclusion of Subsection (c) in the list of subsections under which jurisdiction may originate. Subsection (c) exempts certain Subsection (b) actions from the amount-in-controversy requirement. If Subsection (e) eliminated the amount-in-controversy requirement for all Subsection (b) actions, there would be no reason for it to also list Subsection (c)—deleting the reference to Subsection (c) would have no effect on the meaning or reach of Subsection (e). Courts endeavor to avoid a statutory construction that would render a portion of the statute meaningless.[30]

---

[29] TEX. GOV'T CODE § 25A.004(b).

[30] *Image API, LLC v. Young*, 691 S.W.3d 831, 842 (Tex. 2024) ("[W]e must read subsections (b) and (d) together, 'giving effect to each provision so that [neither] is rendered meaningless or mere surplusage.'" (quoting *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016))); *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014) ("[O]ur text-based approach to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence.").

¶ 19    The language of Subsection (c) itself buttresses this conclusion in two ways. First, when a publicly traded company is a party to a Subsection (b) action, Subsection (c) grants the Court jurisdiction over the action "regardless of the amount in controversy."[31] This shows that the Legislature knows how to exempt actions in one subsection from another subsection's amount-in-controversy minimum in unmistakable terms.[32] If the Legislature intended both Subsection (c) and Subsection (e) to be exempt from the amount-in-controversy minimums, there would be no reason to do so clearly in Subsection (c) and then (purportedly) do the same thing much more obliquely in Subsection (e).

¶ 20    Defendants imply that an exemption from the amount-in-controversy requirement is implied from the fact that declaratory and injunctive claims do not seek monetary damages. But the parties agree that amount-in-controversy minimums can be applied to declaratory and injunctive actions; as discussed below, the amount in controversy in such actions is measured by the value of the rights at issue.

---

[31] TEX. GOV'T CODE § 25A.004(c).

[32] *See Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 855 (Tex. 2024) ("We draw a different conclusion from Section 11.13(a): that the Legislature knows how to limit a particular exemption on a one-per-family basis. The fact that it did so in Section 11.13(a) but not Section 11.131(b) means that Section 11.131(b) bears no such limitation."); *Interest of J.S.*, 670 S.W.3d 591, 613 (Tex. 2023) ("We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015))); *In re Xerox Corp.*, 555 S.W.3d 518, 529 (Tex. 2018) ("Once again, the juxtaposition of word choice in these adjoining statutory provisions shows the Legislature knows how to say "damages" when it means to authorize an award of damages, yet deliberately chose not to use that term in describing the relief available under Section 36.052.").

¶ 21   Second, Subsection (c) refers to actions "*described in* Subsection (b),"[33] whereas Subsection (e) refers to claims "*within the court's jurisdiction under* Subsection (b)."[34] The Court presumes that this difference in language conveys a difference in meaning.[35] This difference is most consistent with the understanding that the reference in Subsection (c) is to the types of actions listed in Subsection (b) but not necessarily all of the jurisdictional prerequisites, whereas the reference in Subsection (e) necessarily implicates Subsection (b)'s jurisdictional prerequisites.[36]

¶ 22   Defendants argue that applying an amount-in-controversy requirement to Subsection (e) makes it redundant. The Court disagrees. Subsection (e) grants the Court jurisdiction over actions seeking specific types of relief—"injunctive relief or a declaratory judgment"—that otherwise might not be available for disputes based on claims within the Court's jurisdiction under Subsections (b), (c), or (d).[37]

¶ 23   Conversely, if Subsection (e) actions were exempt from Subsections (b) and (d)'s amount-in-controversy limits, those limits could be circumvented by

---

[33] TEX. GOV'T CODE § 25A.004(c).

[34] *Id.* § 25A.004(e).

[35] *See Malouf*, 694 S.W.3d at 727 ("[W]e generally presume the Legislature uses the same word consistently throughout a statute and uses different words to convey different meanings."); *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016) ("When the legislature uses certain language in one part of the statute and different language in another, the Court assumes different meanings were intended." (quoting *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995))).

[36] *Malouf*, 694 S.W.3d at 720; *Ritchie*, 443 S.W.3d at 867.

[37] TEX. GOV'T CODE § 25A.004(e).

reframing a claim as one for declaratory or injunctive relief. CTen argues that under Defendants' interpretation, the Court would lack jurisdiction over claims for $10,000 in damages for breach of a company agreement or breach of an agreement with a Business Court choice-of-venue provision, but the same claims would be within the Court's jurisdiction if artfully pleaded as a declaratory-judgment action. The Court does not find this to be the kind of "absurd" result that would justify deviation from the plain meaning of the statutory text.[38] But here, the plain language and structure of the statute dictate an approach under which no such loophole exists.

¶ 24  Finally, Defendants assert that the State Bar of Texas agrees with them, citing material from a State Bar CLE. To the extent the cited material may be understood to mean that qualified declaratory and injunctive claims can be added to actions that otherwise satisfy the Court's amount-in-controversy requirements, the Court agrees. But to the extent it may be understood to mean that declaratory or injunctive claims operate to exempt the entire action from amount-in-controversy limits, the statute says otherwise. "When decoding statutory language, we are bound by the Legislature's prescribed means (legislative handiwork), not its

---

[38] *See Rodriguez v. Safeco Ins. Co. of Ind.*, 684 S.W.3d 789, 795–96 (Tex. 2024) (observing that statutes should be construed to avoid "genuinely absurd results," but "the absurdity safety valve is reserved for truly exceptional cases" where the result would be "unthinkable or unfathomable" (quoting *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013))).

presumed intent (judicial guesswork): 'We must rely on the words of the statute, rather than rewrite those words to achieve an unstated purpose.'"[39]

### b. The amount-in-controversy threshold applies to the action, not each claim.

¶ 25  Having decided that Section 25A.004(b)'s $5 million amount-in-controversy requirement applies here, the Court must next determine *how* it applies. As detailed below, the Court concludes that the amount in controversy applies at the "action" level, considering all claims properly joined before the Court, rather than as a per-claim minimum.

¶ 26  Because Section 25A.004 uses the undefined terms "action" and "claim," the Court is mindful of the distinction between these two terms and the differences in the way the statute uses them. When undefined,[40] the Texas Supreme Court has construed the term "action" to refer to a lawsuit or judicial proceeding generally and the term "claim" to refer to an individual theory of liability or cause of action asserted within a lawsuit or judicial proceeding.[41] The Fifth Circuit has

---

[39] *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86–87 (Tex. 2017) (quoting *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 571 (Tex. 2014) (plurality)).

[40] When these terms are defined by the statute, the Texas Supreme Court employs the definition given. *E.g.*, *Montelongo v. Abrea*, 622 S.W.3d 290, 300 (Tex. 2021) ("By defining 'legal action' to include not just 'lawsuits,' 'petitions,' 'pleadings,' and 'filings,' but also 'causes of action,' 'cross-claims,' and 'counterclaims,' the Act permits a party to seek dismissal within sixty days after service of a cause of action or claim, even if it's not 'early' in the litigation.").

[41] *See Off. of the Attorney Gen. of Tex. v. C.W.H.*, 531 S.W.3d 178, 183 (Tex. 2017) (quoting *Jaster* and *Thomas* for meaning of "action"); *Jaster*, 438 S.W.3d at 563–64 ("The common meaning of the term 'action' refers to an entire lawsuit or cause or proceeding, not to discrete 'claims' or

15

similarly distinguished between the terms "action" and "claim" when construing federal removal statutes.[42] Consistently, the Texas Business Court has recognized that "[a] civil action is a lawsuit."[43]

¶ 27 This is consistent with the ordinary meaning of those terms, as reflected in contemporaneous dictionaries: "action" relates to the lawsuit generally while "claim" relates to individual rights and remedies asserted within the suit.[44] It is also consistent with how those terms are used throughout Section 25A.004. For example, Section 25A.004(b)(3) addresses jurisdiction over "an action in which a claim under a state or federal securities or trade regulation law is asserted."[45]

¶ 28 This Court's jurisdiction under subsection (b) can depend on different aspects of the case, including:

- the nature of the action
  (e.g., "a derivative action"[46]);

- the nature of the claims asserted in the action

---

'causes of action' asserted within a suit, cause, or proceeding."); *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (distinguishing between lawsuits and causes of action in interpreting "health care liability claim"); *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995) ("The term 'action' is generally synonymous with 'suit[.]'"); *see also Montelongo*, 622 S.W.3d at 301.

[42] *E.g.*, *Dillon v. State of Miss. Military Dep't*, 23 F.3d 915, 918 (5th Cir. 1994); *Nolan v. Boeing Co.*, 919 F.2d 1058, 1064–66 (5th Cir. 1990); *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376 (5th Cir. 1980).

[43] *Tema Oil and Gas Co. v. ETC Field Servs., LLC*, 2024 Tex. Bus. 3 at ¶ 15.

[44] *See, e.g.*, *Action*, BLACK'S LAW DICTIONARY (12th ed. 2024); *Claim*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Fresh Coat, Inc. v. Parexlahabra, Inc.*, 424 S.W.3d 237, 242 (Tex. App.—Beaumont 2014, no pet.) (collecting additional definitions and authorities).

[45] TEX. GOV'T CODE § 25A.004(b)(3).

[46] *Id.* § 25A.004(b)(1); *see also id.* § 25A.004(b)(2), (b)(7).

(e.g., "a claim under a state or federal securities or trade regulation law"[47]);

- the nature of the allegations made in the action
  (e.g., "alleges an act or omission by"[48]);

- the nature of the parties to the action
  (e.g., "by an organization, or an owner of an organization . . . against an owner, controlling person, or managerial official"[49]); and
- the nature of the relief or remedy sought in the action
  (e.g., "seeking to hold an owner or governing person of an organization liable for an obligation of the organization"[50]).

¶ 29 Regardless of whether jurisdiction is pegged to specific claims or some other aspect of the suit, Subsection (b)'s jurisdictional grant, and its minimum amount in controversy, refer to the "action": "the business court has civil jurisdiction . . . in the following actions in which the amount in controversy exceeds $5 million . . . ."[51] In fact, all of Section 25A.004's jurisdictional grants refer to the "action,"[52] save one: Subsection (f)'s grant of supplemental jurisdiction refers to claims instead.[53] This makes sense, as supplemental jurisdiction typically applies to

---

[47] *Id.* § 25A.004(b)(3).

[48] *Id.* § 25A.004(b)(4)(B); *see also id.* § 25A.004(b)(5).

[49] *Id.* § 25A.004(b)(5)(A).

[50] *Id.* § 25A.004(b)(6).

[51] *Id.* § 25A.004(b).

[52] *Id.* § 25A.004(c) ("The business court has civil jurisdiction … in an action … ."), (d) ("The business court has civil jurisdiction … in the following actions in which the amount in controversy exceeds $10 million … ."); (e) ("The business court has civil jurisdiction … in an action …. ").

[53] *Id.* § 25A.004(f) ("the business court has supplemental jurisdiction over any other claim … ."). Subsection (f) grants jurisdiction "over any other claim related to a case or controversy within the court 's jurisdiction that forms part of the same case or controversy." *Id.* The phrase "form part of the same case or controversy" is also used in federal courts' supplemental-jurisdiction statute. 28 U.S.C. § 1367(a); *e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005).

only some claims within an action; the court generally must have some independent jurisdiction to which the supplemental jurisdiction can attach.[54] Section 25A.004's jurisdictional carve-outs, on the other hand, are sometimes stated with reference to the "action" and other times to specific "claims."[55]

¶ 30   Applying these common meanings as understood within the context of the statute, the Court holds that jurisdiction under Subsection (b) applies to the listed categories of "actions" when the amount in controversy in the action exceeds $5 million. Because "action" refers to the suit generally, it is not necessary for each individual claim to put more than $5 million in controversy to satisfy Subsection (b).[56] Thus, this Court has jurisdiction over this action only if the claims in the suit, collectively, put more than $5 million in controversy.

¶ 31   Importantly, the Court does not hold that the term "action" can never refer to less than all claims in a suit regardless of whether the claims are properly joined and within the Court's jurisdiction.[57] Section 25A.004 excludes certain

---

[54] *See Exxon Mobil*, 545 U.S. at 554.

[55] TEX. GOV'T CODE § 25A.004(g), (h).

[56] This conclusion is consistent with the analysis of the amount in controversy in district courts, where the Government Code provides: "If two or more persons originally and properly join in one suit, the suit for jurisdictional purposes is treated as if one party is suing for the aggregate amount of all their claims added together, excluding interest and costs." TEX. GOV'T CODE § 24.009. District courts thus are not required to test the amount-in-controversy minimum on a claim-by-claim or even a party-by-party basis.

[57] *Cf. Williams v. Seidenbach*, 958 F.3d 341, 345 (5th Cir. 2020); *id.* at 350–51 (Ho, J., concurring); *id.* at 360–61 (Oldham, J., dissenting) (addressing term "action' as used in federal Rule 41(a)).

"claims" from the Court's jurisdiction and provides for supplemental jurisdiction over certain "claims."[58] The statute thus contemplates that the Court may have jurisdiction over an action but not every claim asserted in the action,[59] and claims over which the Court lacks jurisdiction would have to be either dismissed from the action or severed into a separate action for transfer or remand to another court.[60]

## B. CTen has the burden of showing that Defendants' amount-in-controversy pleadings are fraudulent or that a lesser amount is readily established.

¶ 32 The amount in controversy in an action is "the sum of money or the value of the thing originally sued for."[61] The parties agree with this but disagree over whether the rights at issue in this action have a value over $5 million and how that should be decided. This dispute raises issues of first impression for the procedures governing removal to the Business Court when the parties dispute the amount in controversy. To decide these issues, the Court looks first to Texas authority and then takes guidance from federal authority, mindful of any differences in the governing law.[62] For the reasons below, the Court holds that CTen bears the initial

---

[58] TEX. GOV'T CODE § 25A.004(f), (g)(2)–(5), (h).

[59] *Id.*

[60] *Id.* § 25A.006(b)–(d).

[61] *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) (quoting *Gulf, C. & S.F.Ry. Co. v. Cunnigan,* 95 Tex. 439, 441, 67 S.W. 888, 890 (1902)).

[62] *See, e.g., Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 n.10 (Tex. 2018) (Texas courts look to federal law when interpreting similar authority); *Kinney v. Barnes*, 443 S.W.3d 87, 92 (Tex. 2014) ("We look to federal cases for guidance, not as binding authority."); *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 505–09 (Tex. 2012) (Texas courts look to federal law for guidance when interpreting analogous statutory language but not dissimilar statutory language).

burden of proof in challenging Defendants' allegation that the amount in controversy exceeds $5 million; if CTen meets its burden, the burden shifts to Defendants to raise a fact issue; if there is a fact issue, Defendants will bear the burden of proof at trial.

**1. Defendants pleaded that the amount in controversy exceeds $5 million; CTen has not pleaded otherwise.**

¶ 33   The first step in analyzing jurisdiction is typically a pleadings burden. Whether filing in the Business Court or a district court, a plaintiff must plead facts that affirmatively show the jurisdiction of the court in which the action is brought, including that the relief sought is within the court's amount-in-controversy limits,[63] and a party removing an action to this Court must "plead facts to establish . . . the business court's authority to hear the action."[64] Federal courts likewise require complaints and removal notices to allege facts establishing jurisdiction, including any minimum amount in controversy.[65]

¶ 34   Rule 355 uses the term "plead" with respect to the jurisdictional allegations in a notice of removal.[66] Thus, while the term "pleading" often refers only

---

[63] *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 402 (Tex. 2007); TEX. R. CIV. P. 47(b); TEX. R. CIV. P. 354(a) (requiring petitions to "plead facts to establish the business court's authority to hear the action" and to comply with Part II of the Rules of Civil Procedure, including Rule 47).

[64] TEX. R. CIV. P. 355(b)(2)(A).

[65] *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936); 28 U.S.C. § 1446(a).

[66] TEX. R. CIV. P. 355(b)(2)(A). Notices of removal are not subject to "due order of pleading" rules. TEX. GOV'T CODE § 25A.006(i); TEX. R. CIV. P. 355(d).

to petitions and answers, the jurisdictional allegations in Defendants' notice of removal are part of the "pleadings" for these purposes. As the United States Supreme Court has observed, it would be "anomalous" to treat the jurisdictional allegations in a complaint differently than from those in a notice of removal.[67]

¶ 35   CTen's petitions, including the second and third amended petitions filed in this Court, are silent with respect to whether the action meets the Court's amount-in-controversy minimum.[68] But Defendants plead in their notice of removal that the value of the rights at issue exceeds $5 million. Construing the pleadings liberally in favor of jurisdiction and "look[ing] to the pleader's intent,"[69] the Court holds that Defendants have invoked the jurisdiction of this Court, and at a minimum, the amount-in-controversy allegations do not establish a lack of jurisdiction, such that Defendants would be entitled to amend.[70] The Texas Supreme Court has stated

---

[67] *Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (stating, in context of dispute over jurisdictional amount-in-controversy limit, that it would be "anomalous to treat commencing plaintiffs and removing defendants differently with regard to the amount in controversy").

[68] The petitions assert only that the relief sought is within the district courts' jurisdictional limits.

[69] *Tex. Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024); *see also Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006) (citing *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex. 2002), for rule that "pleadings should be liberally construed in favor of jurisdiction").

[70] *See Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022) ("[S]o long as petitioners' pleading does not affirmatively demonstrate the absence of jurisdiction, they should be given an opportunity to amend."); *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804 (Tex. 1989) ("The failure of a plaintiff to state a jurisdictional amount in controversy in its petition, without more, thus will not deprive the trial court of jurisdiction. Even if the jurisdictional amount is never established by pleading, in fact, a plaintiff may recover if jurisdiction is proved at trial." (citation omitted)).

that, when an action is brought to protect a right or privilege, "[t]he subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy."[71] Independent of their other allegations, Defendants have pleaded that the value of the rights at issue exceeds $5 million.

¶ 36   With respect to Defendants' assertion that the rights at issue implicate the entire value of Summer Moon, the Court views this as unlikely. While the rights at issue appear to go to the heart of Summer Moon's business, at least some part of Summer Moon's value is likely attributable to assets or goodwill not dependent on the rights at stake.[72] But unlikely is not impossible, and even if the entire value of Summer Moon is not at stake here, that does not mean that the value at stake falls below $5 million. Defendants assert that Summer Moon's value "far exceeds $5 million," and CTen admits it has no factual basis for disputing the value of Summer Moon or the value of the rights at issue—an inquiry CTen says would be complex and involve expert analysis.[73] CTen relies solely on its contention that Defendants bear the burden of proof.

---

[71] *Tune*, 23 S.W.3d at 362.

[72] *See generally McNutt*, 298 U.S. at 181.

[73] CTen stated at the oral hearing that it had elected not to investigate the value of Summer Moon, relying instead on the contention that Defendants bore sole responsibility for proving it up.

¶ 37    Additionally, it is evident on the face of the pleadings that this suit puts more at issue than just rights of control. In its live pleadings,[74] CTen seeks declarations that all Defendants breached their fiduciary duties in a myriad of ways that could subject Defendants to potential liability, upend past Board actions (including approval of three new franchise locations), and mandate future Board actions.[75] CTen also seeks to enjoin future actions by the CU Managers, including prohibiting future franchise agreements without CTen's prior written approval, and to compel the Board to take other actions, including the disbursement of unquantified funds.[76] The amount in controversy may be impacted by the scope of these rights that CTen seeks to have determined and enforced in this action, the impact that relief would

---

[74] At oral argument, both parties agreed that the Court should consider CTen's Second Amended Petition (its then-live pleading) in deciding this dispute and need not look at a "snapshot" at the time of removal. After oral argument, CTen filed a Third Amended Petition in which it requested additional declaratory and injunctive relief related to its removal of Summer Moon's chief financial officer during the pendency of this suit.

[75] For example, CTen alleges that Defendants breached their fiduciary duties by failing to distribute unspecified amounts to members as allegedly required by Section 10 of the Company Agreement; earmarking $200,000 for a reserve fund for indemnification related to this lawsuit; approving the sale of franchise rights for three new franchise locations in Wake Forest/Raleigh, N.C., Nichols Hills, Okla., and Edmond, Okla.; authorizing upward salary adjustments and bonuses; failing to update financial disclosure documents; and failing to hire the entity chosen by CTen to serve as Summer Moon's new CFO and approve CTen's proposed terms for that employment, which include a salary of up to $240,000 per year for an indefinite number of years.

[76] For example, CTen seeks to enjoin approval of "any transaction described by Section 11.7," including entering into franchise agreements or incurring certain expenses, without CTen's written consent, and compel the Board to disperse the $200,000 reserve funds and the "mandatory monthly distributions required by the Company Agreement."

23

necessarily have on the rights of CU and Summer Moon's Board, and the duties and liability exposure CTen seeks to impose on Defendants.

### 2. A notice of removal need not attach evidence of the amount in controversy.

¶ 38    CTen complains that Defendants did not file any evidence to support the assertion in their notice of removal that the value of the rights at issue exceeds $5 million. The Court holds that there is no duty to file jurisdictional evidence with a notice of removal to this Court.

¶ 39    Although Texas has no precedent on this, the United States Supreme Court addressed it in *Dart Cherokee Basin Operating Co., LLC v. Owens*.[77] Resolving a circuit split on the issue, the Supreme Court held that the notice of removal was not deficient for failing to include evidence that the amount in controversy exceeded $5 million, as required under the Class Action Fairness Act.[78] The Court reasoned that good faith amount-in-controversy allegations in a notice of removal should be treated like those in a petition: accepted unless and until challenged.[79] It concluded that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and the removal

---

[77] 574 U.S. 81 (2014).

[78] *Id.* at 89.

[79] *Id.* at 87 ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith. Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." (citations omitted)).

statute requires evidence of that amount "only when the plaintiff contests, or the court questions, the defendant's allegation."[80] The Court agrees with and follows this portion of *Owens*.[81]

### 3. Texas and federal courts approach challenges to jurisdictional pleadings differently.

¶ 40   Under both Texas and federal law, when a party pleads in good faith that the amount in controversy is within the court's jurisdictional limits, those allegations control unless they are properly challenged.[82] But Texas and federal courts differ with respect to the burden of proving the amount in controversy when, as here, a party challenges the amount-in-controversy pleadings.

### a. In federal courts, the removing party must prove the amount in controversy by a preponderance of the evidence.

¶ 41   Under federal law, when jurisdictional pleadings are challenged, the party asserting jurisdiction bears the burden of proving it by a preponderance of the evidence—regardless of whether that is the plaintiff in a suit initiated in federal court or the removing party in a suit removed to federal court.[83]

---

[80] *Id.* at 89.

[81] Some portions of *Owens* relate to provisions of the federal removal statute that are not found in the Texas statute and rule, such that Texas law could differ.

[82] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

[83] *See Sentry Ins. v. Morgan*, 101 F.4th 396, 398 (5th Cir. 2024) (burden on plaintiff filing in federal court); *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 314 (5th Cir. 2022) (burden on defendant removing based on diversity); *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 85 (5th Cir. 2013) (burden on defendant removing under Class Action Fairness Act).

¶ 42 Notably, the federal removal statute has a provision specific to amount-in-controversy allegations that is not enacted in Texas.[84] The federal statute states that, in diversity actions (where there is an amount-in-controversy minimum), if the initial complaint specifies the sum demanded in good faith, that amount will be "deemed to be the amount in controversy," *except* that the notice of removal may assert a different amount in controversy if (a) the plaintiff seeks nonmonetary relief or (b) state practice either bars demands for a specific sum or permits recovery in excess of the amount demanded.[85] Federal courts have treated Texas cases as falling within these exceptions.[86] When a removal notice states the amount in controversy and a party challenges the stated amount, the court must remand unless it finds that the amount in controversy is within its jurisdictional limits.[87] In such instances, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."[88]

---

[84] *Compare* 28 U.S.C. § 1446(c)(2)*, with* TEX. GOV'T CODE § 25A.006(d), TEX. R. CIV. P. 355.

[85] 28 U.S.C. § 1446(c)(2)(A).

[86] *See, e.g.*, *InVas Med. Devices, LLC v. Zimmer Biomet CMF & Thoracic, LLC*, No. 3:21-CV-2947-G, 2022 WL 4538459, at *7 (N.D. Tex. Sept. 28, 2022) (nonmonetary relief); *Medina v. Allstate Vehicle & Prop. Ins. Co.*, 458 F. Supp. 3d 591, 596–97 (W.D. Tex. 2020) ("Because plaintiffs in Texas are not limited to the amount demanded in their complaint, § 1446(c)(2)(A)(ii) permits a removing defendant to assert the amount in controversy in the notice of removal . . . .").

[87] 28 U.S.C. § 1446(c)(2)(B).

[88] *Owens*, 574 U.S. at 88; *see also, e.g.*, *Durbois v. Deutsche Bank Nat'l Tr. Co.*, 37 F.4th 1053, 1056 (5th Cir. 2022) (quoting and applying *Owens*).

### b. Texas courts apply the summary-judgment burden schemes.

¶ 43 Texas law has a more nuanced approach. Although the removal scheme for the Business Court is new to Texas law, jurisdictional challenges are not. Parties in Texas courts can challenge the existence of jurisdictional facts through multiple different procedural vehicles, including pleas to the jurisdiction and motions for summary judgment.[89] In turn, the burden for proving disputed jurisdictional facts depends on which procedural vehicle the party uses to challenge jurisdiction and how closely the challenged facts intertwine with the merits of the case.

¶ 44 When a party challenges the existence of jurisdictional facts in a plea to the jurisdiction or a motion for traditional summary judgment, Texas courts follow the framework applicable to traditional summary judgments: the movant bears the initial burden of putting forth evidence refuting jurisdiction; if the movant does so, the burden shifts to the nonmovant to put forth evidence that at least raises a fact issue on jurisdiction.[90] If the evidence creates a fact issue on jurisdiction, the court

---

[89] *Bland*, 34 S.W.3d at 554 ("The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment." (citations omitted)).

[90] *Tex. Health & Human Servs. Comm'n v. Pope*, 674 S.W.3d 273, 281 (Tex. 2023); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221, 227–28 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(c).

cannot grant the plea, and the party asserting jurisdiction must prove it by a preponderance of the evidence at trial.[91]

¶ 45   A party can also challenge the existence of jurisdictional facts through a motion for no-evidence summary judgment.[92] In that instance, the initial burden of proof is on the nonmovant, though it is a lesser burden: the nonmovant need only put forward enough evidence to raise a fact issue as to the challenged jurisdictional facts—i.e., "more than a scintilla."[93] Here too, if the evidence creates a fact issue on jurisdiction, the court cannot grant the motion, and the party asserting jurisdiction must prove it by a preponderance of the evidence at trial.[94] Unlike pleas to the jurisdiction and motions for traditional summary judgment, the rules permit a no-evidence summary judgment motion only "[a]fter adequate time for discovery."[95] The Texas Supreme Court relied on both protections—the lighter initial burden and the opportunity for discovery—in holding that no-evidence motions can be used to attack jurisdictional facts.[96]

---

[91] *Miranda*, 133 S.W.3d at 228; *see also, e.g.*, *Ellis Cnty. State Bank v. Keever*, 888 S.W.2d 790, 792 (Tex. 1994) (preponderance-of-the-evidence standard); *Gray v. Gray*, 354 S.W.2d 948, 949 (Tex. App.—Houston 1962, writ dism'd) (observing that plaintiff in divorce proceeding had to prove that she and defendant were actually married at trial, by a preponderance of the evidence, to establish court's jurisdiction).

[92] *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

[93] *Id.* at 552.

[94] *Id.* at 551–52; TEX. R. CIV. P. 166a(i).

[95] *Swanson*, 590 S.W.3d at 552 (quoting TEX. R. CIV. P. 166a(i)).

[96] *Id.* at 551–52.

### c. In Texas, amount-in-controversy pleadings control unless they are fraudulent or a different amount is readily established.

¶ 46    Another layer of complexity is added when the disputed jurisdictional fact is the amount in controversy. Because it is often closely intertwined with the merits of the case, Texas courts have often distinguished amount-in-controversy challenges from other jurisdictional challenges.[97] Over the last 140 years, the Texas Supreme Court has repeatedly held that, when a party challenges whether a suit is within the court's amount-in-controversy limits, the pleadings control unless the challenger shows that:

   (a) the pleadings are fraudulent, alleging a false amount as a "sham" to wrongfully obtain jurisdiction;[98] or

---

[97] In *Bland*, for example, the Texas Supreme Court explained that requiring a plaintiff to prove his damages in response to a plea to the jurisdiction would improperly require him to "try his entire case" at that early stage of development. 34 S.W.3d at 554.

[98] *Miranda*, 133 S.W.3d at 223 ("[W]hen the defendant contends that the amount in controversy falls below the trial court's jurisdictional limit, the trial court should limit its inquiry to the pleadings. In that situation, we concluded, 'the plaintiff's pleadings are determinative unless the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction.'" (citations omitted, quoting *Bland*, 34 S.W.3d at 554)); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 448–49 (Tex. 1996) (upholding jurisdiction where original petition alleged damages below $100,000, even though plaintiff later amended to seek $250,000, because neither petition itself nor defendant's evidence proved that original amount pleaded was fraudulent when made); *Hoffman v. Cleburne Bldg. & Loan Ass'n*, 85 Tex. 409, 410–11, 22 S.W. 154, 155 (1893) (stating, in the context of amount-in-controversy challenge, "[t]he jurisdiction of the court cannot be defeated when the case stated in the petition is within its jurisdiction, unless it is made to appear that the allegations upon which the jurisdiction depends were fraudulently inserted in the petition for the purpose of conferring the jurisdiction. Such fraud exists when the jurisdictional averments are not only untrue, but are made by the pleader for the purpose of deceiving, and without being believed to be true"); *Tidball v. Eichoff*, 66 Tex. 58, 60, 17 S.W. 263, 263 (1886) (holding that amount in controversy pleaded controls, even if plaintiff may have been mistaken about amount, absent evidence of fraudulent intent); *Dwyer v. Bassett & Bassett*, 63 Tex. 274, 276 (1885) ("If it was thought that the averments of the petition by which the amount in

(b) the amount in controversy is "readily establish[ed]" as outside the Court's jurisdiction.[99]

¶ 47    Thus, when a jurisdictional challenge is based on the amount in controversy, it "must ordinarily be decided solely on the pleadings."[100] "The subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy,"[101] and the court generally will not look behind such pleadings absent evidence that the amount pleaded is fraudulent.[102]

---

controversy was made to exceed in value $500 were made fraudulently, and only for the purpose of giving to the court jurisdiction of the case, then it was necessary that this should not only have been pleaded, but an issue thereon should have been tried under proper instructions."); *Ross v. McGuffin*, 2 Willson 403, 404, 1884 WL 8426, at *1 (Tex. Ct. App. 1884) (upholding denial of plea to the jurisdiction when "the amount claimed in plaintiff's petition is the amount in controversy, and is within the jurisdiction of the court, and there is no evidence of a fraudulent or improper attempt to give jurisdiction, apparent upon the face of the petition, or shown by the record").

[99] *Bland*, 34 S.W.3d at 554 ("[W]hen a defendant asserts that the amount in controversy is below the court's jurisdictional limit, the plaintiff's pleadings are determinative unless the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction, or the defendant can readily establish that the amount in controversy is insufficient, as for example when the issue in dispute is a license or right rather than damages." (citing *Tune v. Tex. Dep't of Public Safety*, 23 S.W.3d 358, 362 (Tex. 2000), in which Texas Supreme Court held that appeal from denial of concealed-handgun license satisfied $100 amount-in-controversy requirement even though claimant had paid only $70 for two-year handgun license, because $140 fee charged for four-year license established that minimum value of license was more than $100)); *see also Tex. Dep't of Public Safety v. Barlow*, 48 S.W.3d 174, 176 (Tex. 2001) (rejecting objection to failure to pleaded or prove amount in controversy in appeal from suspension of driver's license because statutory fees for license established that $100 minimum was met).

[100] *Bland*, 34 S.W. 3d at 555; *see also Cazarez*, 937 S.W.2d at 449 ("Jurisdiction is based on the allegations in the petition about the amount in controversy."). This is true even if the damages sought later increase beyond the jurisdictional limit due to the passage of time or the amount ultimately recovered in the judgment falls outside the jurisdictional limit. *Cazarez*, 937 S.W.2d at 449.

[101] *Tune*, 23 S.W.3d at 362.

[102] *See* fn. 98, *supra*. Texas courts have applied the same standard to disputes over the amount in controversy raised in pleas in the abatement. *E.g.*, *Tex. Land & Irrigation Co. v. Sanders*, 101 Tex. 616, 617, 111 S.W. 648, 648 (1908) (plaintiff alleged value disputed portion of rice crop was $960, just below court's $1,000 maximum, but defendants proved actual value was over $1,000).

**4. CTen bears the initial burden on its motion, and Defendants' pleadings control unless fraudulent or a different amount is readily established.**

¶ 48   The Court follows the Texas approach discussed above and adopts the following procedures for amount-in-controversy disputes in this Court:

¶ 49   First, when the plaintiff's petition alleges the amount in controversy, that pleading controls unless (a) a party presents evidence that the amount pleaded is falsely asserted to wrongly obtain or avoid jurisdiction, or (b) a different amount in controversy is readily established, such as by statutorily set fees.[103]

¶ 50   Second, when the plaintiff's pleadings are silent as to whether the amount in controversy falls within this Court's jurisdiction, but a removing party's notice of removal properly pleads that the amount is within the Court's jurisdiction, those pleadings will be given the same deference in the remand analysis: they will control absent the circumstances described in (a) or (b) above.

¶ 51   Third, in either case, if a party presents evidence demonstrating that the amount in controversy is outside the Court's jurisdiction, the Court will remand the case unless another party presents controverting evidence that, at a minimum, raises a fact issue.[104] And if there is a fact issue, the party asserting jurisdiction will bear the burden of proof on the issue at trial.[105]

---

[103] *Cf. Bland*, 34 S.W.3d at 554; *see also Miranda*, 133 S.W.3d at 224.

[104] *Cf. Pope*, 674 S.W.3d at 281; *Miranda*, 133 S.W.3d at 227–28; TEX. R. CIV. P. 166a(c).

[105] *Cf. Miranda*, 133 S.W.3d at 227–28.

¶ 52    Applying the Texas approach rather than the federal approach means that amount-in-controversy pleadings will be treated the same in this Court regardless of whether they are made by a plaintiff or defendant, and parties challenging such pleadings bear the same burden regardless of whether the challenge is brought in a plea to the jurisdiction, motion for traditional summary judgment, or motion to remand.[106] In each case, the movant bears the burden on a motion filed before trial, while the burden of proof at trial—if jurisdiction is in question at the time of trial—remains on the party asserting jurisdiction. And in each case, amount-in-controversy pleadings control absent specific circumstances.

¶ 53    Adopting the federal approach here would mean that parties alleging jurisdiction in this Court would face different burdens depending on whether the allegations were made in a petition or a notice of removal. Moreover, while the federal approach has appeal, it is not entirely consistent with the reasoning and policy considerations adopted by the Texas Supreme Court in the cases discussed above. Federal courts require parties facing a jurisdictional challenge at the outset of the case to meet the same evidentiary burden (preponderance of the evidence) they would have to satisfy at trial, but the Texas Supreme Court has repeatedly held that a party should not have to marshal its evidence or prove its claims to survive early

---

[106] While this differs from motions for no-evidence summary judgment, those motions are distinguishable in that they apply a lower initial burden of proof and cannot be brought until after an adequate time for discovery has passed. *See* TEX. R. CIV. P. 166a(i)); *Swanson*, 590 S.W.3d at 552.

32

jurisdictional challenges.[107] That policy applies equally here, where an alternative approach would often require a defendant or third party to prove up the plaintiff's potential damages—evidence of which is likely to be in the plaintiff's hands at a pre-discovery stage of trial—even when the plaintiff has never affirmatively pleaded that damages are outside the Court's jurisdictional limits.[108]

¶ 54    Under these holdings, CTen bears the burden of presenting evidence that Defendants' amount-in-controversy pleadings are fraudulent (i.e., falsely assert that the value of the rights at issue exceed $5 million to wrongly obtain jurisdiction) or that the amount in controversy is readily established as $5 million or less.[109] CTen was not aware of this burden when it moved for remand, and the Court previously told the parties that they would be afforded an opportunity to conduct discovery in

---

[107] *See, e.g.*, *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018) ("The plaintiff is not required to marshal all her evidence and conclusively prove her claim to satisfy this jurisdictional hurdle."); *Mission Consol.*, 372 S.W.3d at 637 (noting that plaintiff was not required to "marshal evidence and prove her claim" to show jurisdiction before trial and would "only be required to submit evidence if the defendant presents evidence negating" key jurisdictional facts); *Bland*, 34 S.W.3d at 554 ("A plea to the jurisdiction . . . should be decided without delving into the merits of the case. The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached."); *see also Swanson*, 590 S.W.3d at 551–52 (holding that allowing jurisdictional challenges in motions for no-evidence summary judgment would not improperly require parties to marshal their evidence because of lower burden of proof).

[108] Notably, while a party may specially except to request that a plaintiff amend its pleadings to assert the maximum amount of damages sought, the Court is aware of no similar mechanism for requiring a plaintiff to place a maximum value on the nonmonetary relief sought. *See* TEX. R. CIV. P. 47(c). Additionally, the damage ranges that must be specified under Rule 47—$250,000 or less, between $250,000 and $1 million, or over $1 million—will not resolve disputes of whether the amount in controversy exceeds $5 or $10 million, as required under Section 25A.004(b) and (d).

[109] Because CTen bears the initial evidentiary burden, the Court does not reach the evidence filed by Defendants in response to CTen's motion to remand or CTen's objections to that evidence.

33

the event that jurisdiction could not be decided as a matter of law. Therefore, the Court GRANTS CTen's request to supplement the record and CARRIES its request for remand. Both parties are afforded 45 days (through Monday, February 17, 2025) to conduct any discovery on the value of the subject matter of this case. CTen must file any supplemental briefing and evidence in support of its motion to remand by Monday, February 24, 2025. Defendants must file any responsive briefing and controverting evidence by Monday, March 3, 2025. Absent remand by agreement,[110] an evidentiary hearing will be held on Friday, March 7, 2025 at 10 a.m.

### Choice-of-Venue Analysis

¶ 55   In its motion, CTen also argued that the Court should remand because "[t]he Company Agreement provides for exclusive jurisdiction in the Travis County District Courts." CTen did not provide the language of the venue clause or attach the Company Agreement. In response, Defendants asserted that they are not signatories to the Company Agreement and argued (among other things) that CTen had failed to meet its burden of proving that the venue clause applies to this action or that they are bound by it. Defendants asserted that the reason CTen did not quote or attach the contract is because it would have revealed that the venue clause applies

---

[110] The parties previously came close to negotiating an agreed remand, and the Court recognizes that this opinion might assist the parties in narrowing or resolving the impediments to agreement.

34

only to suits among members, which this is not. CTen did not reply, electing to stand on its motion to remand.

¶ 56  The Company Agreement was not in evidence before or at the hearing on the motion to remand, but it has come before the Court since then in connection with CTen's TRO application. It confirms that Defendants are not signatories and that the venue clause applies to "actions among the members" of Summer Moon, which Defendants undisputedly are not.[111]

¶ 57  Without deciding whether the venue clause otherwise would support remand, the Court holds that CTen has not shown that this action falls within the scope of the clause or that Defendants, as non-signatories, are bound by it. At the hearing on the motion to remand, CTen suggested for the first time that the venue clause applies because Defendants acted as agents of CU, a member of Summer Moon. But CTen offered no evidence or explanation for that theory. "Texas courts do not presume that an agency relationship exists."[112] Instead, the burden of proving

---

[111] Specifically, the venue clause states: "*Each member submits and consents* to the exclusive jurisdiction of the district courts of Travis County, Texas and the United States District Court for the Western District of Texas (Austin Division) and acknowledges and agrees that such courts shall constitute the exclusive and proper venues and convenient forums for the resolution of *any actions among the members* and the company with respect to the subject matter hereof." (emphases added, all-caps omitted). The Company Agreement defines "members" as the current and future holders Summer Moon's Class A, Class B, or Class C Common Units.

[112] *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) (citing *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (per curiam)).

agency rests on the party asserting an agency relationship.[113] Because CTen has not provided any support for its agency theory, the Court cannot rely on it as a basis for remand. The Court DENIES the request to remand this action based on the venue clause in the Company Agreement.

## Motion for Attorney's Fees

¶ 58   CTen seeks to recover the attorney's fees it incurred in seeking remand of this action, relying on Section 10.001 of the Civil Practice & Remedies Code.[114] The Court DENIES this discretionary request.[115] While Defendants did not prevail on their argument that there is no amount-in-controversy minimum for Subsection (e) actions, that argument not without any basis in law,[116] and CTen presented no evidence that Defendants asserted that argument for the purpose of causing delay or driving up costs rather than for the permissible purpose of having their case heard in

---

[113] *Id.*; *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017) ("Agency is not presumed; a party alleging the existence of an agency relationship bears the burden of proving it.").

[114] *See* TEX. CIV. PRAC. & REM. CODE § 10.001. Section 10.001 applies to notices of removal filed in this Court. TEX. GOV'T CODE § 25A.006(h).

[115] TEX. CIV. PRAC. & REM. CODE § 10.004(a) (providing that a court "*may* impose" sanctions).

[116] *See James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 418 (Tex. 2022) (describing an argument as "erroneous, but by no accounts frivolous"); *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 730 (Tex. 2020) ("Making groundless arguments in bad faith or for an improper purpose might warrant sanctions, but arguments that are merely 'unpersuasive' do not."); *Pressley v. Casar*, 567 S.W.3d 327, 334 (Tex. 2019) (per curiam) (holding that party "may be wrong, but her argument . . . is not frivolous" under Chapter 10); *see also McCoy v. Court of Appeals*, 486 U.S. 429, 436 (1988) (describing frivolous arguments as those "that cannot conceivably persuade the court" (quoting *United States v. Edwards,* 777 F.2d 364, 365 (7th Cir. 1985))).

this Court.[117] With respect to the pending dispute over the value of the rights at issue in this action, this ruling is without prejudice to motions by either party seeking to recover attorney's fees incurred after the date of this order.

SIGNED ON: January 3, 2025.

<br>

Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division

---

[117] Courts generally presume that filings are in made in good faith, and the party seeking sanctions bears the burden of overcoming this presumption. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).