

The Business Court of Texas,
Fourth Division

| | | |
|---|---|---|
| ALAMO TITLE COMPANY | § § § | |
| *Plaintiff* | § § | |
| v. | § § | Cause No. 25-BC04B-0017 |
| WFG NATIONAL TITLE COMPANY OF TEXAS, LLC | § § § | |
| *Defendant* | § § | |

## SYLLABUS[1]

Applying the court's jurisdictional balance-shifting framework, the court holds that the defendant's removal notice, which pleaded more than five million dollars in controversy, satisfied the statutory jurisdictional threshold where plaintiff offered no rebutting evidence. The plaintiff's allegations that the former president's new company aided and abetted his breach of fiduciary duties satisfied the jurisdictional clause in Tex Gov't Code Section 25A.004(b)(5). The petition's repeated allegations regarding misappropriation of sensitive business information invoked Section 25A.004(d)(4)'s jurisdictional clause, requiring that the suit relate to intellectual-property ownership or use, despite no standalone trade-secret misappropriation claim.

---

[1] NOTE: The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.



The Business Court of Texas,
Fourth Division

| | | |
|---|---|---|
| ALAMO TITLE COMPANY | § | |
| *Plaintiff* | § § § | |
| v. | § § | Cause No. 25-BC04B-0017 |
| WFG NATIONAL TITLE COMPANY OF TEXAS, LLC | § § § | |
| *Defendant* | § § § | |

## OPINION

¶1 Before the court is Plaintiff Alamo Title Company's Motion to Remand, filed in this cause on December 22, 2025. The court heard argument on the pending motion at a hearing on January 27, 2026. After considering the motion, response, reply, applicable law, and argument of counsel, the court denied the motion by written order on January 27, 2026, for the reasons explained below.

### I. Factual and Procedural Background

¶2 Alamo sues an alleged competitor, Defendant WFG National Title Company, LLC ("WFG"), claiming WFG raided its employees and customers, having misappropriated Alamo's salary details, customer lists, and other sensitive

business information. Pet. at 1-2, ¶¶ 12, 17, 20-22. Alamo's claims accuse WFG of tortiously interfering with Alamo's current and prospective customer contracts, of conspiracy to tortiously interfere, and of aiding and abetting Alamo's former president and other employees in breaching their fiduciary duties. *Id.* ¶¶ 24-41. Alamo initially sued in a district court of Bexar County, and WFG removed to this court. By its motion, Alamo asks the court to remand this action to the district court, contending the court lacks jurisdiction of the action.

## II. Motion Standard

¶3     "A party to an action filed in a district court or county court at law that is within the jurisdiction of the business court may remove the action to the business court." TEX. GOV'T CODE § 25A.006(d). If the Business Court lacks jurisdiction of a removed action, the court shall remand the action to the original court in which the action was filed. *Id.*; TEX. R. CIV. P. 355(f)(1). Whether a court has subject-matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

## III. Chapter 25A confers jurisdiction on this court.

¶4     The parties agree that the Texas Business Court's enabling statute grants the court jurisdiction if the suit involves (1) an amount in controversy of over five million dollars and (2) at least one of the enumerated topics in the relevant portions of the

Texas Government Code's Chapter 25A. *See* TEX. GOV'T CODE § 25A.004(b), (d). Both requirements are satisfied here.

### 1. The action satisfies the amount-in-controversy requirement.

Following longstanding Texas precedent as this court has consistently applied it to the removal–remand context, the court holds that this suit involves over five million dollars in controversy.

A suit's amount in controversy is the sum of money or the value of the thing originally sued for. *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000), *quoted in Atlas LDF. LP v. Nexpoint Real Estate Partners, LLC*, No. 25-BC01B-0004, 2025 Tex. Bus. 16, ¶ 43, 715 S.W.3d 390, 397 (1st Div.). Alamo's petition seeks past and future monetary damages for the torts pleaded against WFG. Pet. ¶¶ 27, 31, 36, 41. Alamo also pleads that past and ongoing irreparable harm is impossible to measure in monetary damages, justifying its right to seek injunctive relief. *Id.* ¶¶ 22-23. Other than its Rule 47 disclosure stating that its sister company, Chicago Title, seeks at least one million dollars in damages, *see* TEX. R. CIV. P. 47(c), the petition identifies no discrete amount in controversy.[1]

---

[1] A week before Alamo filed its motion to remand, WFG moved to consolidate this case with a related suit brought against WFG by Chicago Title of Texas, LLC—a suit in which each side is represented by the same respective counsel as in the case at bar. The court took up the motion to consolidate after denying this motion to remand. Upon hearing argument regarding consolidation, the court instructed the parties to confer regarding scheduling and other potential procedural agreements that may avoid duplication of counsel's efforts and promote efficiency in the two cases, denying the motion to consolidate without prejudice. Because the two suits are two distinct causes,

¶7     In analyzing the amount in controversy, this court follows the well-settled Texas doctrine concerning jurisdictional challenges. *M&M Livestock, LLC v. Robinson*, No. 24-BC08B-0003, 2025 Tex. Bus. 29, ¶ 21, 2025 WL 2207943, at *4 (8th Div.) (citing *Miranda*, 133 S.W.3d at 226 n.4; *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). When faced with a motion to remand, the court applies a burden-shifting framework to analyze its jurisdiction. *C Ten*, 2025 Tex. Bus. 1, ¶¶ 48–51, 708 S.W.3d at 243. Where, as here, a plaintiff moves for remand, and its petition is silent as to whether the suit satisfies the amount-in-controversy threshold, the court looks next to the removal notice. *Id.*

¶8     If the removal notice pleads an amount that meets the jurisdictional threshold, the burden shifts back to the movant to "present[] evidence that Defendants' amount-in-controversy pleadings are fraudulent (i.e., falsely assert that the value of the rights at issue exceed $5 million to wrongly obtain jurisdiction) or that the amount in controversy is readily established as $5 million or less." *Id.* ¶¶ 50, 54. Unless the movant satisfies that burden, the removal notice controls. *Id.* ¶¶ 50–51; *see ET Gathering & Processing LLC v. Tellurian Prod. LLC*, 2025 Tex. Bus. 11, ¶ 9, 709 S.W.3d 1, 5 (11th Div.) ("in absence of proof of fraud or a sham pleading,

---

the amount in controversy in the Chicago suit is not being used to calculate the amount in controversy for the court's remand analysis.

the allegations in the pleadings control to determine whether this court has jurisdiction to hear this case").

¶9     WFG's removal notice pleads that "the amount in controversy exceeds $5 million," excluding the statutory exceptions such as interest and fees. Removal Notice ¶¶ 3, 13, 15. WFG's pleading thus shifted the burden to Alamo—but Alamo attaches no evidence to its motion. Nonetheless, in support of WFG's pleading, WFG points to Alamo's discovery responses that disclose $4.7 million in damages "for the year 2025," which "are ongoing and increasing during the pendency of this litigation," along with additional amounts for unjust enrichment that WFG gained from the "start-up, research, and development costs" it wrongfully avoided through its breaches.[2] WFG also notes that Alamo has "denied," in response to a request for admission, that it will not seek "monetary relief in excess of $5 million." Resp. Ex. 1.

¶10     In support of its position, Alamo relies on a case remanded by this court for failure to satisfy the requisite amount in controversy. *See Black Mountain SWD, LP v. NGL Water Sols. Permian, LLC*, 2025 Tex. Bus. 24, ¶¶ 30–32, 718 S.W.3d 281, 291–92 (8th Div.). *Black Mountain*'s petition sought royalties based on saltwater

---

[2]     This same discovery response was the trigger that WFG pleads prompted its discovery that this suit involved the requisite amount in controversy. *See* TEX. GOV'T CODE § 25A.006(f)(1)(B) (requiring removal within 30 days of the date the removing party discovered or should have discovered "facts establishing the business court's jurisdiction over the action"). Alamo's motion did not challenge the timeliness of the removal, and the court finds no evidence or pleading in the record controverting WFG's pleading that Alamo's discovery responses first reasonably caused WFG to discover facts supporting a sufficient amount in controversy to remove the suit.

5

transported during a specified time period, ending the day the suit commenced. *Id.* ¶ 20. To support its motion to remand, the plaintiff submitted a declaration stating the "maximum royalty owed" for that time period was $4.4 million. *Id.* The court noted that the plaintiff sought a discrete amount of money during a finite period of time, sued for no future damages, and pleaded for no equitable relief or on any other "additional rights or privileges." *Id.* ¶ 27. Faced with an absence of controverting evidence regarding the past damages at issue, the court remanded the suit. *Id.* ¶¶ 21, 23, 31.

¶11     Here, WFG's removal notice pleads more than five million dollars in controversy, which adequately satisfies the statutory jurisdictional threshold. Unlike in *Black Mountain*, though, Alamo presents no evidence rebutting that amount. Rather than prove a "maximum" recovery of under five million dollars, as the plaintiff did in *Black Mountain*, Alamo admits to a $4.7 million **minimum** amount in controversy, in addition to: (1) future damages; (2) avoided-cost restitution; and (3) harm to its "business, its reputation, its goodwill with its customers, and its ability to compete" resulting in "damages" that "would not be possible to measure, in dollars and cents." Resp. Ex. 3; Pet. ¶¶ 23, 26, 27, 31, 36, 41. Rather than capping or disproving WFG's pleaded amount in controversy,

6

Alamo's petition and admissions affirmatively demonstrate that it claims damages and incalculable harm exceeding $4.7 million.[3]

¶12     Alamo incorrectly contends that future damages are irrelevant to the amount in controversy. While Alamo relies on a federal case in purported support of its argument, that unpublished opinion does not discuss future damages at all—standing instead for the simple proposition that "jurisdictional facts that support removal must be judged at the time of removal." *Queens Mobile Home Cmty. v. JP EL Paso I, LLC*, No. EP-15-CV-00298-FM, 2016 WL 11582359, at *6 n.66 (W.D. Tex. Feb. 2, 2016). When pleaded at the time of removal, future damages **are** included by Texas and federal courts in determining the amount in controversy. *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 403 (Tex. 2007) (including "unaccrued wage payments" when calculating amount in controversy, despite arguments that the future wages were speculative and unlikely to be recovered); *Ashford v. Aeroframe Servs., L.L.C.*, 96 F.4th 783, 796 n.8 (5th Cir. 2024) (holding that petition pleading "negligible" past damages fell "well above the minimum threshold" when including future lost wages and fees); *e.g. Johnson*, 836 F. Supp. at 394–95. Alamo presents

---

[3]     As noted in *Black Mountain*, the failure to stipulate to a maximum damages amount is one factor used by federal courts in determining whether remand is appropriate. 2025 Tex. Bus. 24, ¶ 31, 718 S.W.3d at 292 (citing *Johnson v. Dillard Dep't Stores, Inc.*, 836 F. Supp. 390, 394–95 (N.D. Tex. 1993) (denying remand)). Regardless, this court applies the above burden-shifting approach, which is consistent with Texas procedural law, rather than the federal doctrine that requires the removing party to prove jurisdictional facts by a preponderance of the evidence. *C Ten*, 2025 Tex. Bus. 1, ¶¶ 41, 52–54, 708 S.W.3d 243–45.

no basis for disregarding its future-damages or incalculable-harm allegations to reduce its amount in controversy here.

¶13    With nothing on this record controverting WFG's pleading as to the amount in controversy, the removal notice controls. The remand motion on that basis must be denied.

## 2. The suit satisfies the statute's topical requirements for jurisdiction.

¶14    Alamo also contends the suit fails to satisfy one of the substantive topics over which Chapter 25A grants jurisdiction. Because there are at least two statutory clauses that confer jurisdiction here, Alamo's argument fails.

### a. The suit alleges the requisite breaches by a controlling person or managerial official.

¶15    WFG's notice of removal first relies on the portion of this court's enabling statute conferring jurisdiction, in relevant part, over:

> (4) an action by an organization, or an owner of an organization, if the action [] is brought **against** an owner, controlling person, or managerial official of the organization; [] and alleges an act or omission by the person in the person's capacity as an owner, controlling person, or managerial official of the organization; [and]
>
> (5) an action **alleging that** an owner, controlling person, or managerial official breached a duty owed to an organization or an owner of an organization by reason of the person's status as an owner, controlling person, or managerial official, including the breach of a duty of loyalty or good faith.

TEX. GOV'T CODE § 25A.004(b)(4), (b)(5) (emphases added); Removal Notice ¶ 3.

8

¶16 "In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole." *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 619 (Tex. 2022). Where a statute is unambiguous, courts look only to the statutory text, which is "the alpha and the omega of the interpretive process." *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017). If a case can be "decided according to the statute itself, it must be decided according to the statute itself." *Id.* at 78, *quoted in OWL AssetCo I, LLC v. EOG Res., Inc.*, No. 25-BC11A-0052, 2025 Tex. Bus. 47, ¶ 6, 2025 WL 3499016, at *2 (11th Div.).

¶17 Alamo is correct that the first clause is likely not triggered in this suit, but the second clause plainly applies. The petition pleads that WFG's "mass raid" began with its president, Edward Hall, who reached an agreement with WFG "to tortiously interfere with" customer contracts and used his position to solicit Alamo's employees to depart for WFG. Pet. ¶¶ 14, 34. The petition describes standards that Alamo's "officers" owe from its parent company's employee handbook, attaching an excerpt of the handbook that requires protection of confidential information. Pet. ¶10; Ex. A. Alamo describes breaches of its employees' fiduciary duties in transferring sensitive business information to WFG—and expressly pleads that WFG aided and abetted Hall and other employees "to breach the fiduciary duties they owed to Alamo Title." Pet. ¶¶ 17, 40.

9

¶18     Alamo concedes Hall, as its president, was a managerial official. This suit may not be one "**against**" a managerial official under Subsection (b)(4). But this suit does **allege** that a managerial official breached duties as required under Subsection (b)(5).

¶19     Alamo admits its pleading contains allegations regarding Hall's fiduciary breaches, but it questions whether those duties were owed "by reason of" his status as president. Alamo points out that officers owe more stringent duties of loyalty, while nonofficer employees may owe "less capacious fiduciary duties." This argument is beside the point; Alamo declines to concede that it will hold Hall to any lesser duties than those owed as an officer. Alamo's position is also belied by its pleading, which relies on Hall's "unique position" in describing his "coordinated raid" with WFG of Alamo. Whatever level of fiduciary duties Alamo accuses Hall of breaching, those duties are necessarily owed "by reason of [his] status as a . . . managerial official." TEX. GOV'T CODE § 25A.004(b)(5). The petition does not accuse him of breaching, for example, a duty of reasonable care to a fellow driver on the highway or a duty of disclosure owed to a buyer while selling his home. Any fiduciary duties Hall owed to Alamo hinge on his role as officer.

¶20     Alamo's pleading alleges a managerial official's breach of duties owed by reason of his status. On this basis alone under the record before it, the court can, and must, exercise jurisdiction of this suit.

**b. The suit relates to intellectual-property ownership or use.**

¶21      An additional, alternative basis for jurisdiction presented by WFG is for:

> (4) an action arising out of or **relating to the ownership, use, licensing, lease, installation, or performance of intellectual property,** including . . . [] a trade secret, as that term is defined in Section 134A.002, Civil Practice and Remedies Code; and
>
> (5) an action **arising out of Chapter 134A**, Civil Practice and Remedies Code.

TEX. GOV'T CODE § 25A.004(d)(4)–(5) (emphasis added); Removal Notice ¶ 3. Subsection (4), too, is independently sufficient to confer jurisdiction on this court.

¶22      Alamo itself states that "the gravamen of the case is about soliciting customers and carrying away customer lists." Alamo's petition expressly pleads that WFG has misappropriated its sensitive business information, including customer lists and employee compensation details, and has transferred it to WFG for its competitive use. The petition describes and relies upon its employee handbook's confidential-information standards. Alamo admits, as it must, that its petition references intellectual property.

¶23      Alamo seeks to narrow Subsection (4)'s scope by focusing on the "arising out of" phrase in its intellectual-property provision. But the subsection also uses the disjunctive phrase "relating to," which is construed broadly by Texas courts—and requires no causal link. *Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 535–36 (Tex. 2016) (defining "related" as "[c]onnected in some way; having

11

relationship to or with something else"); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam) (interpreting "related to" under the Texas Citizens Participation Act as requiring no more than a tangential relationship); *see Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Texas, LLC*, 363 S.W.3d 192, 198–99 (Tex. 2012) ("We presume the Legislature is aware of relevant caselaw when it enacts statutes.").

¶24 Despite its express allegations concerning its intellectual property, Alamo asks the court to require a "stronger connection" between the intellectual property and the lawsuit for jurisdiction to lie. But the court cannot do so. The court adheres to the statutory language, recognizing that "statutory terms bear their common, ordinary meaning, unless the text provides a different meaning or the common meaning leads to an absurd result." *Miles*, 647 S.W.3d at 619.

¶25 Though even an indirect connection may satisfy Subsection (4) under Texas's construction of the term *relating to*, this case does not push the term to any extreme. Alamo's petition is replete with allegations concerning its ownership, and WFG's misuse, of Alamo's intellectual property. Alamo directly accuses WFG of "misappropriation," referencing its "sensitive business information" multiple times. Alamo repeatedly accuses WFG of transferring and misusing its "operational, business, and customer information," the "customer and clientele lists," "client

12

files," and compensation details for WFG's wrongful competitive advantage. These allegations are central, not tangential, to the petition.

¶26       Alamo argues that Subsections (4) and (5) create surplusage in the statute under WFG's interpretation of them. And it is true that both subsections reference the Texas Uniform Trade Secrets Act ("TUTSA"). Subsection (4) broadly encompasses actions relating to intellectual property, including but not limited to "data" or TUTSA-defined trade secrets, while Subsection (5) is specific to claims arising out of TUTSA. On its face, Subsection (4) confers jurisdiction on a suit that relates to intellectual property—whether or not the suit references TUTSA.[4] Alamo's surplusage theory does not advance the ball because Alamo could not proffer a construction of Subsections (4) and (5) that rendered those subsections entirely distinct and somehow carved this suit out of **both**. Regardless, Chapter 25A's jurisdictional grants often overlap, allowing any given lawsuit to take more than one path to this court if the suit satisfies multiple enumerated prongs.[5]

---

[4]       In any event, TUTSA displaces other civil remedies for trade-secret misappropriation, regardless of whether the claimant expressly invokes its provisions. TEX. CIV. PRAC. & REM. CODE § 134A.007(a); *see also id.* § 134A.002(6) (defining "trade secret" to include "list of actual or potential customers or suppliers, whether tangible or intangible"). The court need not reach whether Subsection (5) is satisfied here.

[5]       Consider Chapter 25A's enumeration of (1) derivative proceedings; (2) actions involving an entity's governing documents; and (3) actions arising out of the Business Organization Code. As concerns a Texas corporation, a Venn Diagram depicting those three categories might contain so much overlap that one circle is entirely engulfed by another. Yet each of the three are separately listed as grounds for jurisdiction. Rather than surplusage, these clauses create multiple alternatives, among which claimants may choose any combination to plead their case. Similarly, Subsection (4)'s intellectual-property clause may be broad enough to engulf Subsection (5)'s

13

¶27 Alamo's causes of action include no discrete misappropriation claim. But—adhering to Chapter 25A's plain language—the pleaded claims and the suit as a whole unquestionably "relate to" Alamo's alleged confidential information as Alamo has pleaded its case. The court has jurisdiction of this action because it is one "relating to the ownership and use of intellectual property[.]" *See* TEX. GOV'T CODE § 25A.004(d)(4).

### 3. The court's jurisdiction extends to the entire suit.

¶28 Having determined that Chapter 25A grants jurisdiction based on the specified clauses above, the court also concludes the jurisdictional grant extends to the entire suit. As explained above, at least two statutory subsections apply to this case: Section 25A.004(b)(5) granting jurisdiction over "an action" alleging breaches by a controlling person or managerial official; and Section 25A.004(d)(4) granting jurisdiction over "an action" relating to intellectual property. The term "'action' refers to the entire lawsuit—not individual claims or causes of action[.]" *In re Durant*, 720 S.W.3d 438, 442 (Tex. App.—15th Dist. 2025, orig. proceeding).

¶29 "Where *action* means the entire case, the grant of jurisdiction over the action broadly encompasses all joined parties and claims, except where restricted as set forth in Section 25A.004(g) and (h)." *Sun Metals Grp., LLC v. Yu*, No. 25-BC01A-

---

TUTSA-specific clause, but either clause is a viable alternative jurisdictional hook for a party to gain access to the Texas Business Court when both apply.

0050, 2026 Tex. Bus. 1, ¶ 4, 2026 WL 37435, at *1–2 (1st Div.). Each statutory prong therefore independently "grants the Court jurisdiction over the entire action unless otherwise proscribed by the statute." *Id.* No party contends that any of the restricted topics in Subsections (g) or (h) are implicated in this suit.

¶30 Adhering to the Fifteenth Court of Appeals' guidance, this court has declined to "read[] the Legislature's jurisdictional grant in Section 25A.004(b) as limited to itemized claims." *Id.* ¶ 5. The court similarly declines to so limit the jurisdictional grant in Section 25A.004(d). Having concluded it has authority under the statutory prongs described above, the court must retain jurisdiction over the entirety of the action.

## CONCLUSION AND ORDER

¶31 Based on the record before it, the court holds that this action involves over five million dollars in controversy and that, at a minimum, it (1) alleges that a managerial official breached a duty owed to an organization by reason of the person's status, and (2) relates to the ownership or use of intellectual property. For these reasons, the court denied Plaintiff Alamo Title Company's motion to remand.

SO ORDERED.

STACY ROGERS SHARP
Judge of the Texas Business Court,
Fourth Division

SIGNED ON: February 3, 2026

15