2025 Tex. Bus. Ct. 25



The Business Court of Texas
Eleventh Division

| | | |
|---|---|---|
| SHABBAR KASSAM, individually and derivatively as a member of ZZLS, LLC, and ZAIN KASSAM, individually and derivatively as a member of MSW23, LLC and VALLEY TRADING COMPANY LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>AMISH DOSANI, SAMSHUNDIN DAWOODANI, and LAILA DAWOODANI,<br><br>*Defendants,*<br><br>and<br><br>ZZLS, LLC, MSW23, LLC, and VALLEY TRADING COMPANY, LLC,<br><br>*Nominal Defendants*. | §§§§§§§§§§§§§§§§§§§§§§§§ | Cause No. 24-BC11A-0021 |

═══════════════════════════════════════════════════

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO SEVER AND PLEA TO JURISDICTION**

═══════════════════════════════════════════════════

[¶ 1] Before the Court is the Motion to Sever and Plea to Jurisdiction ("Motion")

filed by Defendants—Amish Dosani ("Amish"), Samshundin Dawoodani

("Samshundin"), and Laila Dawoodani ("Laila")—on January 29, 2025, and submitted for decision on June 20, 2025. In the Motion and the supporting briefs, Defendants argue that the claims filed by Plaintiffs—Shabbar Kassam ("Shabbar") and Zain Kassam ("Zain")—are improperly joined and, whether considered collectively or individually, fail to satisfy the amount-in-controversy requirement. Defendants, thus, seek: (1) severance of the claims; and/or (2) dismissal of the claims, whether severed or not; and/or (3) separate trials of the claims, if not severed or dismissed. After considering the parties' arguments and the relevant law, the Court concludes that the Motion should be **DENIED**.

## JOINDER/SEVERANCE/SEPARATE TRIALS

[¶ 2] The Court has broad discretion concerning procedural matters such as joinder, consolidation, severance, and separate trials under the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 40, 41, 51, 174; *Pohl v. Cheatham*, No. 23-0045, 2025 WL 1349691, at *12 (Tex. May 9, 2025); *Guar. Fed. Sav. Bank v. Horseshoe Oper. Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *Royal Petroleum Corp. v. Dennis*, 332 S.W.2d 313, 317 (Tex. 1960); *Womack v. Berry*, 291 S.W.2d 677, 682 (Tex. 1956). These rules encourage trying, in a single lawsuit, multiple claims involving related acts and common issues of law and fact if the judicial economy and convenience in so proceeding outweighs the possibility of delay, injustice, prejudice, or confusion. *See In re Levi Strauss & Co.*, 959 S.W.2d 700, 702-04 (Tex. App.—El Paso 1998, orig. proceeding); *In re Jobe Concrete Prods., Inc.*, No. 08-01-00351-CV, 2001 WL 1555656, at *7 (Tex. App.—El Paso Dec. 6, 2001, orig. proceeding)(not designated for publication). Whether claims should remain together is a question of law ordinarily determined by reviewing the generally accepted-as-true

allegations in the pleadings. *See In re Liu*, 290 S.W.3d 515, 520 (Tex. App.—Texarkana 2009, orig. proceeding).

[¶ 3] The live pleading is Plaintiffs' First Amended Petition filed on June 13, 2025. Plaintiffs, who are not, and have never been, members of the same nominal defendant, bring six claims in their individual and derivative capacities for monetary and non-monetary relief against Defendants. These six claims are for breach of contract, breach of fiduciary duty, money had and received, attorney's fees, access to books and records, and receivership and injunction.[1] Of the six claims, Plaintiffs join together in five of them; Shabbar is the only Plaintiff suing Defendants for breach of contract. Nonetheless, the six claims are based on common and aggregate factual allegations revolving around the operational control and mismanagement of the nominal defendants—ZZLS LLC ("ZZLS"), MSW23 LLC ("MSW23"), and Valley Trading Company LLC ("Valley Trading")—by Defendants to Plaintiffs' detriment beginning in mid-2024 and continuing to date. Plaintiffs allege that the nominal defendants are historically profitable and interrelated, with ZZLS as the hub and Valley Trading and MSW23 as the spokes, sharing bank accounts, payroll, inventory, space, and assets. Plaintiffs allege that Defendants, especially Samshundin, who has identified himself as the chief executive officer of the nominal defendants, have usurped operational control of and mismanaged the nominal defendants. Defendants have allegedly done so, according to Plaintiffs, by, among other acts: (1) unilaterally naming themselves to executive positions; (2) withholding distributions and

---

[1] The Court notes that the first amended petition is not verified.

salaries; (3) forbidding access to books and records; (4) loaning and transferring large sums of money without documentation; and (5) removing valuable inventory without explanation and possibly shifting it to other entities controlled by Defendants.

[¶ 4] Defendants argue that Plaintiffs' six claims are mis-joined under Rule 40 and should be severed into three separate causes under Rule 41 for the same reason: because Plaintiffs seek relief for completely different acts concerning completely different companies, *i.e.*, the nominal defendants. Defendants assert that, because Plaintiffs are not members of the same companies, their requests for relief implicate only the companies in which they are members, and, thus, nothing connects their claims together. Defendants insist that Plaintiffs, by stacking disparate claims not involving the same operative facts and issues and not arising out of the same transactions and same companies, are impermissibly forum shopping and attempting to influence the jury against them with volume over quality and guilt by association. The remedy, according to Defendants, is to sever into a separate lawsuit—or, in the alternative, order separate trials for—each claim related to a particular nominal defendant. Thus, in Defendants' view, there should be three separate suits or trials: (1) Shabbar's claims against Amish, Samshundin, and Laila vis-à-vis ZZLS; (2) Zain's claims against Amish, Samshundin, and Laila vis-à-vis MSW23; and (3) Zain's claims against Amish, Samshundin, and Laila vis-à-vis Valley Trading.

[¶ 5] Defendants' view is too restrictive, and their argument is unpersuasive. There is a substantial overlap between the analysis applied under Rules 40 and 41. *See In re Jobe*, 2001 WL 1555656, at *7. These rules concern the propriety of joined claims, and their focus is on relatedness and commonality. *See id.* For claims to be joined under Rule 40,

three requirements must be met. The claims must: (1) seek the same right to relief; (2) arise out of the same transaction or occurrence or series of them; and (3) involve common questions of law or fact. *See* TEX. R. CIV. P. 40(a); *Pohl*, 2025 WL 1349691, at *12. Claims arise out of the same transaction or occurrence if they are logically related to one another; that is, if the essential facts are significantly and logically relevant to the claims. *See Blalock Prescription Ctr., Inc. v. Lopez–Guerra*, 986 S.W.2d 658, 662 (Tex. App.—Corpus Christi 1998, no pet.); *In re Jobe*, 2001 WL 1555656, at *7. And for claims to be severed under Rule 41, three requirements must also be met. Severance is appropriate if: (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining ones that they involve the same facts and issues. *See* TEX. R. CIV. P. 41; *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658; *In re Liu*, 290 S.W.3d at 520. The overlap between these rules is that claims should remain together and not be severed or tried separately if they are logically related to one another or interwoven together and hinge on common material or essentially identical questions of law and fact. *See* TEX. R. CIV. P. 40, 41.

[¶ 6] Here, based on the causes of action alleged in the pleadings currently on file, Plaintiffs' claims are logically related and hinge on common material questions of law and fact; therefore, they should remain joined and unsevered in a single lawsuit. Plaintiffs are not alleging that Defendants committed individual acts at different times for separate purposes. Instead, Plaintiffs are alleging that Defendants, acting in concert at approximately the same time, usurped operational control of the nominal defendants and,

in doing so, breached duties owed to, and to the detriment of, Plaintiffs and the nominal defendants. That Shabbar, and not Zain, is alleging that Defendants' misbehavior includes the breach of ZZLS's operating agreement does not change the reality that the totality of events entitling Plaintiffs to bring suit against Defendants originates from a common nucleus of operative and aggregate facts connecting Plaintiffs nearly equally.

[¶ 7] In a situation, such as here, where a common subject matter is involved, it is likely that the same witnesses will testify to the transactions or occurrences and that similar evidence from sources extrinsic to the parties will be used, thus promoting judicial economy and convenience. Consequently, each Defendant will not be required to expend additional effort and to deal with information and discovery pertinent only to the other Defendants. This is not a situation where each Defendant has simply been lumped with others to suit Plaintiffs' convenience and where each Defendant has competing interests and strategies, entitling him or her to present an individualized defense. Because this is not such a situation, each Defendant will not be prejudiced by the possibility of confusion of issues, additional expenses of a multi-defendant trial, and the likelihood the jury would fail to distinguish the facts applicable to each Defendant if he or she has to defend this matter in the same trial as the other Defendants. In sum, based on the causes of action alleged in the pleadings currently on file, the judicial economy and convenience of proceeding with joined and unsevered claims in a single lawsuit—and presumably a single trial—outweighs the possibility of delay, injustice, prejudice, or confusion.

## JURISDICTION

[¶ 8] As previously mentioned, Defendants contend that, even if Plaintiffs' claims remain joined, the Court does not have jurisdiction over them because the amount-in-controversy requirement is not met. Jurisdiction is ordinarily a question for the law for the Court to decide. *C Ten 31 LLC ex rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 9, 708 S.W.3d 223, 230 (3rd Div.). Plaintiffs allege that the amount in controversy exceeds $5 million. *See* TEX. GOV'T CODE ANN. §§ 25A.004(b)(1)-(7). Defendants argue that Plaintiffs cannot rely exclusively on their general and conclusory averment that the amount in controversy exceeds $5 million to establish jurisdiction. According to Defendants, Plaintiffs are required to plead specific facts affirmatively demonstrating that the amount in controversy exceeds $5 million to establish jurisdiction. Defendants insist that Plaintiffs did not bear their burden to allege facts or calculations showing, either on a company-by-company basis or even on a combined basis, that the amount in controversy exceeds $5 million. Defendants assert that the allegations in Plaintiffs' petitions, original and amended, and the arguments raised in Plaintiffs' supporting briefs cite to random smatterings of evidence that, even if true, fail to show claimed damages exceeding $5 million.

[¶ 9] Defendants' contentions in their Motion and supporting briefs challenge the sufficiency of Plaintiffs' allegations concerning the amount in controversy. A jurisdictional challenge to the amount in controversy is distinguishable from other jurisdictional challenges. *C Ten*, 2025 Tex. Bus. 1, at ¶ 46, 708 S.W.3d at 242. The Court has adopted a procedure for resolving a jurisdictional challenge to the amount in controversy. *Id.*, 2025

Tex. Bus. 1, at ¶¶ 48-51, 708 S.W.3d at 243. Where, as here, a party challenges a pleading that alleges that the amount-in-controversy requirement is met, the pleading controls unless the challenging party can present evidence readily establishing an amount outside the jurisdictional threshold or showing that the amount pleaded is a sham to confer jurisdiction. *Id.*

[¶ 10] Relying on their previous arguments, Defendants insist that they can easily show that Plaintiffs' conclusory averment is a sham and that the amount in controversy is insufficient. Defendants assert that Plaintiffs' conclusory averment is a sham because Plaintiffs have not provided any calculation supporting the jurisdictional threshold. Defendants further assert that the amount in controversy is insufficient because the dollar amounts associated with the allegations that that they improperly withheld distributions and salaries, removed and shifted valuable inventory, loaned money to employees, spent corporate funds on personal expenses and third-party loans, and managed the businesses to produce losses show damages far less than $5 million. In arguing that the amount in controversy is insufficient, Defendants rely on evidence attached to their Supplemental Brief on Plea to Jurisdiction and Reply in Support of Plea to Jurisdiction and Severance. This evidence consists of Samshundin's declaration regarding the allegations identified above and ZZLS's financial statements for 2023 and 2024. But the evidence submitted by Defendants does not prove the existence of a sham pleading. Nor does it readily establish an amount outside the jurisdictional threshold as required by *C Ten*. Instead, in Defendants' own words, the evidence is intended to show "that the categories of damages

that Plaintiffs plead come nowhere close to the requisite threshold[,]" which is not the same as readily establishing an amount outside the jurisdictional threshold.

[¶ 11] As the party raising an amount-in-controversy jurisdictional challenge, Defendants bear the burden of presenting evidence that Plaintiffs' pleadings do not control the amount-in-controversy inquiry because the pleadings are fraudulent or because an amount outside the jurisdictional threshold is readily established. Defendants have not presented any such evidence. In the absence of such evidence, the allegations in Plaintiffs' First Amended Petition control to determine whether the Court has jurisdiction over this action. *C Ten*, 2025 Tex. Bus. 1, at ¶ 49, 708 S.W.3d at 243. At this stage, Plaintiffs have no obligation to marshal their evidence and prove their claims to satisfy the amount-in-controversy requirement. *Id.*, 2025 Tex. Bus. 1, at ¶ 53, 708 S.W.3d at 244. When reviewing Plaintiffs' allegations in the petition, the Court construes them liberally in favor of jurisdiction and looks to Plaintiffs' intent. *Id.*, 2025 Tex. Bus. 1, at ¶ 53, 708 S.W.3d at 244. The amount in controversy in an action is the sum of money or the value of the thing originally sued for. *Id.*, 2025 Tex. Bus. 1, at ¶ 32, 708 S.W.3d at 237.

[¶ 12] Here, Plaintiffs, in asserting that the amount in controversy exceeds $5 million, seek monetary and non-monetary relief in their six causes of action. Among the causes of action brought by Plaintiffs are their claim for breach of fiduciary duty, their request for access to books and records, and their request for receivership and injunction, all based on factual allegations revolving around the operational control and mismanagement of the nominal defendants beginning in mid-2024 and continuing to date. As previously mentioned, Plaintiffs allege that Defendants have usurped operational

control of and mismanaged the nominal defendants by, among other acts: (1) unilaterally naming themselves to executive positions; (2) forbidding access to books and records; (3) loaning and transferring large sums of money without documentation; and (4) removing valuable inventory without explanation and possibly shifting it to other entities controlled by Defendants. Thus, in so alleging, Plaintiffs seek not only to recover damages but also to protect the value of the rights of control of the nominal defendants at stake, implicating the entire values of the nominal defendants, which, according to Plaintiffs, are historically profitable—especially ZZLS with revenues of $42 and $43 million in 2023 and 2024—and interrelated, sharing bank accounts, payroll, inventory, space, and assets. Construing the allegations liberally in favor of jurisdiction and looking to Plaintiffs' intent leads the Court to conclude that the allegations are sufficient to invoke the Court's jurisdiction. *See C Ten*, 2025 Tex. Bus. 1, at ¶ 35-37, 708 S.W.3d at 238-39 (concluding that, for purposes of analyzing the amount-in-controversy requirement, the business court may consider the value associated with controlling a business entity and the potential liabilities associated with breaching fiduciary duties).

### CONCLUSION

[¶ 13] The Court **DENIES** the Motion.

IT IS SO ORDERED.

_____
JERRY D. BULLARD
Judge of the Texas Business Court,
sitting by assignment

SIGNED ON: June 30, 2025